IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PAULETTE BAIDEN-ADAMS,           )
                                 )
        Plaintiff,               )
                                 )
        v.                       )    1:13cv272 (JCC/IDD)
                                 )
FORSYTHE TRANSPORTATION,         )
INC.,                            )
                                 )
        Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Forsythe
Transportation's ("Defendant" or "Forsythe Transportation")
Motion to Dismiss for Lack of Subject Matter Jurisdiction and
Failure to State a Claim for Relief ("Motion"). [Dkt. 11.] For
the following reasons the Court will grant Defendant's Motion to
Dismiss.

## I.    Background

This case arises out of an alleged instance of sexual
harassment and retaliation in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000).

### A.    Factual Background

Forsythe Transportation is a Delaware corporation that
provides transportation services under a contract with Arlington
County. (Compl. ¶ 2.) The transportation system operated by

Forsythe Transportation is known as Arlington Rapid Transit ("ART").  (Compl. ¶ 2.)  Plaintiff, Paulette Baiden-Adams ("Plaintiff" or "Baiden-Adams") was employed by Forsythe Transportation as a training supervisor at the ART facility located at 2900 Jefferson Davis Highway, Arlington, Virginia.  (Compl. ¶ 7, 9.)

Plaintiff alleges that beginning in 2010, she and other similarly situated women were subjected to "unwelcome sexual comments and touching" by ART facility managers.  (Compl. ¶ 7.)  Specifically, she alleges that two managers – Operations Manger Abdul Sanusi ("Sanusi") and Supervisor Wilbeck Adomako ("Adomako") – engaged in harassing behavior.[1]  (Compl. ¶ 8.)  Plaintiff avers that she worked under the direct supervision of both managers.  (Compl. ¶ 8.)  Plaintiff alleges that both Adomako and Sanusi would "regularly, at times daily, make inappropriate sexual comments to Ms. Adams and other similarly situated women."  (Compl. ¶ 8.)  Additionally, Plaintiff alleges that Adomako would "routinely pinch and caress Ms. Adams on her arms" and rub her shoulders in an unwanted manner.  (Compl. ¶ 8.)  Plaintiff alleges that she protested this treatment to Union shop stewards to no avail.  (Compl. ¶ 8.)

---

[1] Plaintiff's complaint spells Adomako's name as both "Adomako" and "Adomoko" throughout.  The Court will use the spelling "Adomako."

Plaintiff also alleges that she "began to warn and counsel new female employees" to avoid Sanusi and Adomako because of their behavior. (Compl. ¶ 9.)  Plaintiff was terminated on September 17, 2010. (Compl. ¶ 9.)  She alleges that her termination came in "response to her efforts to protect female drivers from this sexual harassment." (Compl. ¶ 9.)  She further alleges that Forsythe's purported basis for her termination was the failure to report a "single-vehicle, no-damage accident on September 15, 2010." (Compl. ¶ 9.)  This accident allegedly involved a female driver whom Plaintiff had "counseled about sexual harassment." (Compl. ¶ 9.)

On November 3, 2010, Plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (Mem. Ex. 1. [Dkt. 13-1])  In her EEOC charge Plaintiff named Forsythe Transportation as the organization which discriminated against her. (Mem. Ex. 1.) Plaintiff checked three boxes alleging discrimination based on "race," "sex" and "retaliation." (Mem. Ex. 1.)  Plaintiff's charge lists the dates that the discrimination took place as between April 1, 2010 and October 9, 2010. (Mem. Ex. 1.)  She did not check the box indicating that the discrimination was a continuing action. (Mem. Ex. 1.)

In the description of particulars, Plaintiff's charge states:

3

> On or about June 12, 2009, I was hired by
> Forsythe Transportation as a Bus Operator.  At
> the time of my employment termination with
> Forsythe I was a Safety / Training Supervisor.
>
> In early September 2010, I sent an email to Tom
> Greufe (Regional Manager) about my pay raise.  On
> September 17, 2010, I was suspended and replaced
> by a male.  On October 1, 2010, my supervisor
> Mark Ostertag discharged me.
>
> I believe I have been discriminated against based
> on my Race (Black) and Sex (Female).  I also
> believe I have been retaliated against, in
> violation of Title VII of the Civil Rights Act of
> 1964, as amended.

(Mem. Ex. 1.)  On June 9, 2011, Plaintiff's charge was
transferred from the EEOC for the Arlington Human Rights
Commission ("ARCO") pursuant to a work-sharing agreement between
the two agencies.  (Mem. Ex. 2. [Dkt. 13-2])  On August 24,
2011, Plaintiff filed a Complaint of Discrimination in Violation
of Chapter 31 of the Arlington County Code with ARCO.  (Mem. Ex.
3. [Dkt. 13-3])  Plaintiff's ARCO charge listed particulars in
language nearly identical to that in the EEOC charge.  (Mem. Ex.
3.)  On July 17, 2012, ARCO issued a letter stating that on
March 16, it had determined that "no reasonable grounds exist to
sustain the allegations of discrimination set forth in the
complaint."  (Mem. Ex. 4. [Dkt. 13-4])  On December 7, 2012 the
EEOC issued a dismissal and notice of rights adopting ARCO's
findings of fact with regards to Baiden-Adams's charge and

4

providing her with notice of her right to sue.  (Mem. Ex. 5. [Dkt. 13-5])

On March 29, 2012, Plaintiff's counsel wrote to ARCO requesting a review of determination.  (Opp. Ex. 3. [Dkt. 17-3]) Counsel asked for a review of Plaintiff's claims of "gender discrimination, unlawful termination and retaliation" and listed several alleged failings of the ARCO Final Investigative Report. (Opp. Ex. 3.)  ARCO scheduled an appeal for Thursday, July 12 at 8:00 p.m.  (Opp. Ex. 5. [Dkt. 17-5])  The ARCO appeals process is based on the record and closed to the public. (Opp. Ex. 5.) On July 17, 2012, ARCO issued a letter informing plaintiff that the commission's determination was upheld.  (Opp. Ex. 7. [Dkt. 17-7])

B.   Procedural Background

On March 1, 2013 Plaintiff filed her Complaint against Defendant Forsythe Transportation.  [Dkt. 1.]  Defendant filed its answer on June 14, 2013.  [Dkt. 5.]  On July 25, 2013, Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim and accompanying memorandum of law.  [Dkts. 11-12.]  Plaintiff filed her opposition on August 8, 2013.  [Dkt. 17.]  On August 14, 2013 Plaintiff filed a Notice of New Ruling on Subject Matter Jurisdiction. [Dkt. 18.]  On August 14, 2013 Defendant filed its reply.  [Dkt. 19.]

Defendant's Motion to Dismiss is before the Court.

## II.   Standard of Review

A.   <u>Subject Matter Jurisdiction</u>

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.  In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district

court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

B.   <u>Failure to State a Claim</u>

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

        To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

8

### III. Analysis

A.   Exhaustion of Administrative Remedies

1.   Sexual Harassment Claim

Count I of the Complaint alleges that Defendant created and maintained a "sexually hostile work environment" in violation of Title VII.  (Compl. ¶ 12.)  Defendant argues that the claim should be dismissed for failure to exhaust administrative remedies.  Defendant contends that the claim of sexual harassment outlined in the complaint is not reasonably related to the claims listed in the EEOC charge.  (Mem. at 2.)

To have standing to file suit under Title VII, a plaintiff must first "exhaust his administrative remedies by filing a charge with the EEOC."  *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); 42 U.S.C. § 2000e-5(b). "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Corr.,* 48 F.3d 134, 138-40 (4th Cir. 1995)).

Plaintiff, citing to case law from outside the Fourth Circuit, argues that administrative exhaustion is not a jurisdictional prerequisite or that filing a charge and receiving a right to sue letter is alone sufficient to confer

9

subject matter jurisdiction. (Opp. at 6.) The Fourth Circuit Court of Appeals has made plain that administrative exhaustion is jurisdictional in nature. *See Jones*, 551 F.3d at 132; *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). Moreover, Plaintiff's argument fails because, as will be discussed below (see *infra*) a federal court has subject matter jurisdiction only over those claims actually exhausted. *See Johnson*, 682 F. Supp. 2d at 570 ("Accordingly, a federal court has no subject matter jurisdiction over a Title VII claim for which the plaintiff has not exhausted such administrative remedies.").

To satisfy the requirements of administrative exhaustion, a plaintiff must file an administrative charge within the timeframe specified by 42 U.S.C § 2000e-5(e)(1). A charge is "acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)(2004)). After the filing of a charge, the EEOC investigates the "alleged unlawful acts and provides notice of the charges to the employer within ten days." *Id.* at 508-509. If the EEOC finds "reasonable cause to believe that the charge is true the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference,

conciliation and persuasion." *Balas*, 711 F.3d at 407 (quoting 42 U.S.C. § 2000e-5(b)).  If the EEOC determines that there is not reasonable cause to proceed or the claimant requests a right to sue, the EEOC may issue a right to sue letter.  *Id.*

A plaintiff's subsequent lawsuit can advance only those claims stated in the EEOC charge, claims reasonably related to those stated in the charge, and those developed by a reasonable investigation of the charge.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  "If the plaintiff's Title VII claims 'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'"  *Balas*, 711 F.3d at 407 (quoting *Chacko*, 429, F.3d at 506).  Therefore, the Court must look "only to the charge filed [with the EEOC]" in making a determination of what claims were properly exhausted.  *Id.* at 408.

The Fourth Circuit has consistently held that a plaintiff's claim exceeds the scope of the EEOC charge where the charge alleges one basis of discrimination and litigation introduces another independent basis.  *Chacko*, 429 F.3d at 509. In *Bryant*, for example, the court found that where a plaintiff's EEOC charge alleged discrimination based on race, his claims in litigation based on color and sex discrimination were procedurally barred.  *Bryant*, 288 F.3d at 132-33.  Additionally,

11

as the court in *Chacko* noted, "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 509.  Moreover, the Fourth Circuit has reiterated that the "touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related.'"  *Sydnor v. Fairfax Cnty. Va.,* 681 F.3d 591, 595 (4th Cir. 2012).  The exhaustion inquiry depends not on the broad terms of the boxes on the EEOC charge but instead whether "reasonable investigation of [the plaintiff's] administrative charge would have uncovered the factual allegations set forth in formal litigation."  *Chacko*, 429 F.3d at 512.

The Court finds that Plaintiff's sexual harassment claim must be dismissed for failure to exhaust administrative remedies.  Plaintiff's claim filed in this Court proceeds on a hostile workplace theory.  She alleges that two managers – Sanusi and Adomako - made harassing statements to her and in her presence.  (Compl. ¶ 8.)  She further alleges that Adomako "pinch[ed] and caress[ed]" her and rubbed her shoulders in an uninvited manner.  (Compl. ¶ 8.)  Plaintiff's EEOC charge, however, relates a substantially different factual basis for her claim against Forsythe Transportation.[2]  In her EEOC charge,

---

[2] Plaintiff also filed a charge of discrimination with ARCO after her case was transferred there pursuant to a work-sharing agreement.  (Mem. Ex. 3.)  The

Plaintiff alleges, *inter alia*, that she was discharged because of complaints she raised regarding a "pay raise." (Mem. Ex. 1.) Plaintiff's administrative charge states: "In early September 2010, I sent an email to Tom Greufe (Regional Manager) about my pay raise. On September 17, 2010, I was suspended and replaced by a male. On October 1, 2010, my supervisor Mark Ostertag discharged me." (Mem. Ex. 1.) As in *Chacko*, where the court noted that the administrative charges "dealt with different timeframes, actors, and conduct" than was presented at trial, here too the judicial complaint diverges from the EEOC charge on all three of these fronts.

Looking first to the timeframes at issue, the Court finds that Plaintiff's EEOC charge does not reflect the continuing nature of the action alleged in her complaint. Plaintiff's complaint references a continuing course of conduct "beginning in 2010." (Compl. ¶ 8.) The sexual harassment alleged was, as described in the complaint, an "ongoing, severe and pervasive pattern." (Compl. ¶ 12.) In her EEOC charge, however, plaintiff did not check the continuing action box, nor did she make reference to any incidents beyond her e-mail

---

ARCO charge repeats the same allegations in nearly identical language to the EEOC charge. (Mem. Ex. 3.) Plaintiff's complaint references only the filing of an EEOC charge as fulfilling the requirements of administrative exhaustion. (Compl. ¶ 6.) The Court therefore will discuss Plaintiff's EEOC charge in evaluating whether she exhausted administrative remedies but notes that the analysis is equally applicable to any claim of arising out of Plaintiff's ARCO charge.

regarding a raise, and subsequent suspension and firing. (Mem. Ex. 1.) As in *Chacko*, where the court found that specific allegations of harassment in the plaintiff's EEOC charge did not suggest the "continuous pattern of abuse" he later sought to prove, Plaintiff's charge references only a specific instance of discrimination, not a pattern of harassment. *Chacko*, 429 F. 3d at 511.

Second, Plaintiff's EEOC charge and her complaint address significantly different actors. Plaintiff's administrative charge describes the actors at issue as Tom Greufe (Regional Manager) ("Greufe") and Plaintiff's supervisor Mark Ostertag ("Ostertag"). (Mem. Ex. 1.) Her complaint describes a pattern of harassment by Sanusi and Adomako. (Compl. ¶ 8.) The allegations of harassment by these individuals are simply not reasonably related to allegations of wrongful discharge by Greufe and Ostertag. *Compare Sydnor,* 681 F.3d at 595 ("Sydnor's case against the County thus did not involve shifting sets and a rotating cast of characters that would have deprived her former employer of notice of the allegations against it.").

Finally, Plaintiff's EEOC charge and her complaint allege unrelated actions. Plaintiff's EEOC charge alleges that she was wrongfully terminated on the basis of her race and sex after asking about a pay raise. (Mem. Ex. 1.) Plaintiff's

14

complaint alleges sexual harassment.  An investigation into
misconduct relating to Plaintiff's termination and the alleged
race or sex-based bias leading to that adverse action "could not
be expected to lead" to a pattern of sexual harassment by other
managers.  *Chacko*, 429 F.3d at 512.[3]

Moreover, while Plaintiff argues that because she
alleged sex discrimination in her EEOC charge, a subsequent
sexual harassment claim must not be procedurally barred, the
Court rejects such an argument.  (Opp. at 8.)  In the context of
sex discrimination, courts have consistently found that checking
the box for "sex" exhausts administrative remedies only as to
those claims included in or reasonably related to the
administrative charge.

In *Logan v. Colonial Williamsburg Hotel Properties,*
for example, this Court considered a claim of sexual harassment
brought against the plaintiff's former employer.  *Logan v.
Colonial Williamsburg Hotel Properties,* 941 F. Supp. 60, 61
(E.D. Va. 1996).  The plaintiff in *Logan* had filed a complaint

---

[3] Plaintiff argues that the letter requesting a Review of Determination before
ARCO and the evidence submitted at the ARCO appeal hearing on July 12, 2012
should be considered in determining the scope of her administrative charge.
(Opp. at 14.)  Additionally, Plaintiff argues that the EEOC determination
letters issued to other female employees of Forsythe Transportation are
evidence of the scope of her administrative charge.  (Opp. at 16.)  As the
court noted in *Balas*, however, this Court may not consider such evidence in
evaluating whether Plaintiff exhausted administrative remedies as to her
claims of sexual harassment and retaliation.  *Balas*, 711 F.3d at 408.  "In
determining what claims a plaintiff properly alleged before the EEOC, we may
look only to the charge filed with that agency."  *Id.*  Therefore, the Court
will look only to the charge filed with the EEOC (and nearly identical ARCO
charge) in determining the scope of Plaintiff's claims.

with the EEOC alleging wrongful discharge because of discrimination on the basis of race and sex. *Id.* This Court found that the plaintiff failed to exhaust administrative remedies as to her sexual harassment claim because it was not "similar or related to" the discrimination charged in the EEOC filing. *Id.* at 62. This Court noted, "in several cases, courts have dismissed claims of sexual harassment, which were not included within the original EEOC charge, alleging a different form of sex discrimination, based on the fact that sexual harassment is distinct from other forms of sex discrimination." *Id; see also Cuffee v. Verizon Communications, Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010) (holding that plaintiff's hostile environment claim based on the advances of a particular individual were too far removed from the "discrete episodes of harassment" by other individuals laid out in plaintiff's charge letter); *Bryant v. Better Business Bureau of Greater Md. Inc.*, 923 F. Supp. 720, 746 (D. Md. 1996) (noting "it is unreasonable to assume that the mere mention of 'sex' in the administrative charge will invoke an investigation into all possible basis of discrimination based on sex by the employer").

Likewise, a reasonable investigation of Plaintiff's statement that she had been discriminated against on the basis of sex would not have "uncovered the factual allegations" giving rise to Plaintiff's claim of sexual harassment. *Chacko*, 429

16

F.3d at 512.  As in *Logan*, Plaintiff's claim of wrongful termination based on sex, without more, does not exhaust administrative remedies as to a sexual harassment claim with a different factual underpinning.

Finally, while Plaintiff notes that she filed her EEOC charge *pro se* and claims that Forsythe Transportation was aware of her sexual harassment claims, neither of these contentions is sufficient to avoid the requirement of administrative exhaustion.  (Opp. at 9-10.)  While the Court acknowledges that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality,' we are not at liberty to read into administrative charges allegations they do not contain."  *Balas*, 711 F.3d at 409 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 828 F.2d 457, 460 (4th Cir. 1998)).  Moreover, Plaintiff's arguments regarding Forsythe's alleged actual notice are unavailing; such knowledge does not cure Plaintiff's failure to exhaust administrative remedies through the required statutory procedure.[4]  Accordingly, the Court will dismiss Count I.

---

[4] Plaintiff also argues that the "Single Filing Rule" should allow her to pursue her claim.  (Opp. at 18.)  The Single Filing Rule "allows plaintiffs who have not exhausted the administrative requirement of filing with the EEOC to *join* in a lawsuit with other plaintiffs who have exhausted the requirement, provided that all plaintiffs' claims are substantially similar and that the EEOC charge itself gave notice of the charge's collective nature."  *White v. BFI Waste Services, LLC*, 375 F.3d 288, 293 (4th Cir. 2004) (emphasis in original).  Plaintiff does not, however, allege that another

2.  Retaliation Claim

Count II of the Complaint alleges that Defendant terminated Baiden-Adams in retaliation for "counseling to female drivers about sexual harassment." (Compl. ¶ 17.)  Defendant argues that like the sexual harassment claim, Plaintiff's retaliation claim was not properly included in her administrative charge.  (Mem. at 6.)  Plaintiff argues that she presented evidence of retaliation to ARCO in her reconsideration hearing and that she properly identified "retaliation" in her administrative charge.  (Opp. at 8.)[5]

A plaintiff must exhaust administrative remedies to bring suit on a claim of retaliation.  *See* 42 U.S.C. § 2000e-5(f)(1).  One means of meeting the exhaustion requirement for a retaliation claim is by filing a sufficient charge specifically identifying the retaliation.  A plaintiff may also bring a claim of retaliation not explicitly contained in the EEOC charge where that claim of retaliation was a "kind of discrimination like or related to allegations contained in the charge or growing out of such allegations during the pendency of the case before the

---

suit has been filed against Forsythe Transportation.  Therefore the Court rejects any attempt to invoke the Single Filing Rule at this time.
[5] In evaluating Plaintiff's retaliation claim, the Court may look only to those "allegations included in the EEOC charge." *Balas*, 711 F.3d at 408. Any claims contained in allegations included only in the evidence submitted to ARCO but not contained in an administrative charge is "outside the jurisdiction of the federal courts." *Id.* at 409.

commission." *Johnson*, 682 F. Supp. 2d at 573 (quoting *Jones*, 551 F.3d at 302).

Here, Plaintiff's retaliation claim was not properly exhausted. As noted above, Plaintiff's EEOC charge states that she was discharged following an e-mail to her supervisor regarding a pay raise and that she was subsequently replaced by a male employee. (Mem. Ex. 1.) The charge then states "I believe I have been discriminated against based on my Race (Black) and Sex (Female). I also believe I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Mem. Ex. 1.)[6] This is the sole statement in the EEOC charge regarding retaliation. Read in context the charge appears only to suggest that Defendant retaliated against her based on her inquiries into a raise.

The Court finds that Plaintiff's claim that she was terminated based on her "efforts to protect female drivers" from sexual harassment is not reasonably related to the retaliation described in the EEOC charge. (Compl. ¶ 9.) The EEOC's reasonable investigation into retaliation based on her charge could not have "uncovered the factual allegations" set forth in Plaintiff's complaint. *Chacko*, 429 F.3d at 512. Instead,

---

[6] Plaintiff's ARCO charge adds only ". . . and Chapter 31 of the Arlington County Code" to the end of this sentence. (Mem. Ex. 3.)

Plaintiff's complaint sets forth a wholly new basis for her termination.

Additionally, Plaintiff's claim of retaliation does not grow out of the allegations contained in the charge or the fact of the charge itself as under *Jones* or *Nealon v. Stone*. *See Jones*, 551 F.3d at 300; *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). In *Nealon*, the Fourth Circuit found that "plaintiff asserted a Title VII claim of retaliation based on her filing of a *previous* EEOC charge." *Johnson*, 682 F. Supp. 2d at 573 (quoting *Nealon*, 958 F.2d at 590) (emphasis in original). Here, by contrast, Plaintiff's claim states that she was retaliated against based on on-the-job efforts to protect other female drivers from harassment, not because she filed an administrative charge with the EEOC. (Compl. ¶ 9.)

Likewise, the Court finds that the rationale of *Jones* is not applicable to Plaintiff's case. In *Jones*, the Fourth Circuit found that a plaintiff had exhausted administrative remedies because her "retaliation claim was reasonably related to allegations included in an EEOC charge." *Johnson*, 682 F. Supp. 2d at 573 (quoting *Jones*, 551 F.3d at 301). As discussed above (see *supra*), Plaintiff's retaliation claim is not "reasonably related" to the EEOC charge. Plaintiff's EEOC charge describes retaliation only in the context of her inquiries regarding pay. (Mem. Ex. 1.) Again, the EEOC's

reasonable investigation would not have uncovered Plaintiff's claim of retaliation in response to efforts to prevent sexual harassment in her workplace.  Therefore, the Court will dismiss Count II.

B.   Failure to State a Claim of Wrongful Discharge

Count III of the Complaint alleges that Plaintiff was wrongfully discharged in violation of Virginia public policy. Specifically, Plaintiff alleges that her termination violated Virginia's public policy in two ways.  First, it violated Virginia's policy of "safeguard[ing] all individuals within the Commonwealth from unlawful discrimination because of . . . sex, pregnancy, childbirth or related medical conditions . . . in employment" as articulated in the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900.  (Compl. ¶ 22.)  Second, Plaintiff argues that her termination violated Virginia public policy as articulated in Title VII.[7]  Defendant argues no common law claim exists for wrongful discharge under the facts alleged and, if such a claim did exist, it would be time barred.  (Mem. at 13.)

In her opposition, Plaintiff admits that any claim arising based on a public policy embodied in § 2.2-3900 would be time barred.  (Opp. at 18 "To the extent Ms. Baiden-Adams'

---

[7] Plaintiff states that this allegation is contained in ¶ 20 of the Complaint which incorporates by reference ¶ 7, which alleges violations of Title VII. (Opp. at 18.)

claims are under § 2.2-3900 of the Virginia Code, she concedes they are time barred.")[8]  Plaintiff, however, makes no such concessions with regards to "the wrongful termination claim on the basis of sex and retaliation arising under Title VII." (Opp. at 19.)  The Court therefore will first address whether such a claim exists under Virginia law.

The Court finds that a violation of Title VII is not a proper basis for an action alleging violation of Virginia public policy.  Virginia follows the common law rule of employment-at-will.  *See McCarthy v. Texas Instruments Inc.,* 999 F. Supp. 823 (E.D. Va. 1998)(citing *Stonega Coke & Cole Co. v. Louisville & N. R. Co.,* 106 Va. 223, 55 S.E. 551, 552 (1906)).  In *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), however, the Supreme Court of Virginia carved out a "narrow exception to that rule to allow common law claims for wrongful terminations that violate the Commonwealth's public policy." *McCarthy*, 999 F. Supp. at 828.

In evaluating whether a plaintiff may state a *Bowman* claim, the Supreme Court of Virginia has consistently required

---

[8] The Court agrees that such a claim would not be timely.  Va. Code Ann. § 8.01-248 governs claims of wrongful discharge.  The statute was amended in 1995 to state that where no limitation is otherwise provided, a two-year statute of limitations applies.  Va. Code Ann. § 8.01-248; *Michael v. Sentara Health System,* 939 F. Supp. 1220, 1229 (E.D. Va. 1996) (applying the one-year statute of limitations provided in § 8.01-248 before the 1995 amendments to a wrongful discharge claim.)  Here, Plaintiff's complaint alleges that she was discharged on September 17, 2010. (Compl. ¶ 9.)  Plaintiff filed her claim on March 1, 2013, more than two years after her alleged wrongful termination. Therefore, Plaintiff's claim of wrongful discharge in violation of Virginia public policy as articulated in the VHRA is not timely and will be dismissed.

22

the identification of a specific Virginia statute establishing the allegedly violated public policy.  *See Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806, 809 (1996) (holding that plaintiff failed to state a claim for wrongful discharge where he failed to identify a specific Virginia statute violated by defendant).  This Court, therefore, has found that Title VII of the Civil Rights Act of 1964 is categorically unable to provide the basis of a *Bowman* claim because a federal statute "does not provide an expression of Virginia's public policy." *McCarthy*, 999 F. Supp. at 829. Simply put, Title VII is not a state statute as required under *Lawrence Chrysler*.  Plaintiff thus fails to state a claim for wrongful discharge in violation of Virginia public policy "arising under Title VII."[9]  (Opp. at 19.)

Because the Court finds that Plaintiff cannot state a claim for wrongful termination under Virginia law based on a public policy embodied in Title VII, it declines to address the

---

[9] Moreover, while Plaintiff concedes that any claim arising under the VHRA is time barred, this Court has consistently held that the VHRA may not provide the basis for a *Bowman* claim in any event.  *See Lamb v. Qualex Inc.*, 28 F. Supp. 2d 374, 379 (E.D. Va. 1998) (noting that "courts of this district have unanimously held that the VHRA and analogous state statues no longer provide the public policy basis for a *Bowman* cause of action."); *Williamson v. Virginia First Sav. Bank*, 26 F. Supp. 2d 798, 803 (E. D. Va. 1998) (". . . *all* common-law wrongful discharge claims have been abrogated to the extent that they are based on public policies reflected in the VHRA."); *McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823 (E.D. Va. 1998).  Therefore, Plaintiff's claim of wrongful discharged based on public policies embodied in the VHRA would be dismissed for failure to state a claim even if it were timely.

timeliness of such a claim.  The Court therefore will dismiss

Count III.

### IV.  Conclusion

For the foregoing reasons, the Court will grant

Defendant's Motion to Dismiss.

An appropriate Order will issue.

<table>
<tr><td></td><td>/s/</td></tr>
</table>

September 4, 2013                    James C. Cacheris
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE

24